b

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

MARGIE LOLA HARDWICK,
Appellant

CIVIL DOCKET NO. 1:21-CV-00009

VERSUS

DISTRICT JUDGE JOSEPH

COMMISSIONER OF SOCIAL
SECURITY,
Appellant

MAGISTRATE JUDGE PEREZ-MONTES

## REPORT AND RECOMMENDATION

Margie Lola Hardwick ("Hardwick") filed an appeal in this Court seeking judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). Because Hardwick has not shown the ALJ's/Commissioner's decision is not supported by substantial evidence, Hardwick's appeal should be DENIED and the final decision of the Commissioner should be AFFIRMED.

I.   Background

A.   Procedural Background

Hardwick filed an application for Social Security disability insurance benefits ("DIB") in 2016, alleging a disability onset date of June 11, 2016, due to fibromyalgia and hypothyroidism. ECF No. 11-1 at 65, 228, 260. That claim was denied by the Social Security Administration ("SSA"). ECF No. 11-1 at 95.

A *de novo* hearing was held before an administrative law judge ("ALJ") on February 1, 2018. ECF No. 11-1 at 29-46. The ALJ found Hardwick was not disabled and denied her benefits. ECF No. 11-1 at 84-85. On review, the Appeals

Council vacated the ALJ's decision because the ALJ's appointment violated the Appointments Clause, United States Const. Art. II, § 2.  ECF No. 11-1 at 91.  The Appeals Council ordered the case remanded to a new ALJ for a new hearing.  ECF No. 11-1 at 91.

A second *de novo* hearing was held before an ALJ on May 19, 2020, at which Hardwick appeared with an attorney and a VE.  ECF No. 11-1 at 48-62.  The ALJ found that, although Hardwick has severe impairments of fibromyalgia, shoulder impairment, degenerative disc disease, and obesity (ECF No. 11-1 at 16), she has the residual functional capacity ("RFC") to perform sedentary work except that she cannot lift overhead.  ECF No. 11-1 at 18.  The ALJ found that Hardwick can perform her past relevant work as a loan clerk (ECF No. 11-1 at 22) and concluded that Hardwick was not disabled at any time from June 11, 2016 (the alleged disability onset date) through the date of his decision on May 28, 2020.  ECF No. 11-1 at 22.

Hardwick requested a review of the ALJ's decision, but the Appeals Council declined to review it (ECF No. 11-1 at 6).  The ALJ's decision became the final decision of the Commissioner.

Hardwick next filed this appeal for judicial review of the Commissioner's final decision.  ECF NO. 1.  On appeal, Hardwick contends the ALJ's physical residual functional capacity determination ("RFC") is not supported by substantial evidence because the ALJ calculated Hardwick's RFC based on his own lay

interpretation of the medical evidence. ECF Nos. 14, 18. The Commissioner opposes Hardwick's appeal. ECF No. 17.

### B. Medical Records

In January 2012, Hardwick was evaluated at LaSalle Family Medicine and diagnosed with hypothyroid, multiple site joint pain, and elevated blood pressure (122//92). ECF No. 11-1 at 350-51. Hardwick weighed 234 pounds. ECF No. 11-1 at 389. For her joint pain, Hardwick was prescribed Mobic and physical therapy, and was referred to rheumatology. ECF No. 11-1 at 388. Hardwick was prescribed Synthroid for her hypothyroid. ECF No. 11-1 at 388. And Hardwick was instructed to monitor her blood pressure at home. ECF No. 387.

Hardwick saw Dr. Mohammad Shbeeb in February 2012 for her complaints of generalized muscle and joint pain "all over" for six to seven months. ECF No. 11-1 at 409. Hardwick weighed 236 pounds, was 5' 5 ½" tall, and her blood pressure was 135/77. ECF No. 11-1 at 409. Hardwick had a decreased range of motion of the right shoulder-positive impingement, and widespread muscle attachment tender points in the upper and lower torso, with decreased range of motion of the lumbar spine and tenderness at the paraspinal muscles. ECF No. 11-1 at 409. Dr. Shbeeb found the physical examination was consistent with a diagnosis of fibromyalgia.[1] ECF No. 11-1 at 410. Dr. Shbeeb recommended weight loss. ECF No. 11-1 at 410.

---

[1] In *Puckett v. Barnhart*, 2003 WL 1831066, at *6 (E.D. Tex. 2003), the court noted the definition of fibromyalgia:

3

In July 2013, Hardwick was evaluated at LaSalle Family Medicine and diagnosed with hypothyroidism, fibromyalgia, degenerative joint disease, and insomnia.  ECF No. 11-1 at 352, 364.

In October 2013, Hardwick was admitted to LaSalle General Hospital with diagnoses of fatigue, hypothyroidism, and elevated blood pressure.  ECF No. 11-1 at 362.  A lipid screen was ordered.  ECF No. 11-1 at 362.  Hardwick weighed 247 pounds, and her blood pressure was 154/100.  ECF No. 11-1 at 266.  Weight loss (the 5:2 Plan) and exercise were recommended.  ECF No. 11-1 at 366.

In December 2013, Hardwick was diagnosed with hypothyroidism, insomnia, and weight gain; prescribed trazodone; and referred for a colonoscopy and treatment at a weight loss clinic.  ECF No. 11-1 at 354.  Hardwick was 5'5" tall, weighed 262 pounds, and her blood pressure was 128/80.  ECF No. 11-1 at 354.  It was noted that Hardwick had undergone a sleep study and did not have sleep apnea.  ECF No. 11-1 at 354.

Hardwick was evaluated in January 2015 for left elbow/arm pain.  ECF No. 11-1 at 379.  Hardwick was previously diagnosed by Dr. Shbeeb with fibromyalgia and prescribed Cymbalta.  ECF No. 11-1 at 379.  Although the Cymbalta worked

---

Fibromyalgia is a complex rheumatic condition with no known cause or cure. The American College of Rheumatology "has established diagnostic criteria that include pain on both sides of the body, above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites." *Stedman's Medical Dictionary,* 27th ed.

4

well as first, it was no longer helping as much, and Hardwick had a lot of pain in both shoulders.  ECF No. 11-1 at 379.  Hardwick weighed 230 pounds and her blood pressure was 134/74.  ECF No. 11-1 at 380.  Hardwick was diagnosed with epicondylitis-left and fibromyalgia, and prescribed Savella, regular exercise, a Medrol dose pack, and HCTZ (hydrochlorothiazide) for edema, and her Trazadone and Flexeril were continued.  ECF No. 11-1 at 380.

In March 2015, Hardwick was evaluated for complaints of depression and tiredness since stopping Cymbalta in January 2015.  ECF No. 11-1 at 374.  Hardwick also reported her shoulder pain was improving.  ECF No. 11-1 at 374.  Hardwick weighed 232 pounds and her blood pressure was 121/56.  ECF No. 11-1 at 375.  She was diagnosed with fibromyalgia, depression, and hypothyroidism, and her Synthroid was increased.  ECF No. 11-1 at 375, 398.

In October 2015, Hardwick weighed 263 pounds and her blood pressure was 144/73.  ECF No. 11-1 at 370.  She complained of numbness and tingling in her left lower extremity.  ECF No. 11-1 at 369, 446.  She was diagnosed with lumbar radiculopathy and prescribed Celestone, a Medrol Dosepak, and rest.  ECF No. 11-1 at 370, 396, 447.

In February 2016, Hardwick sought chiropractic treatment for low back pain.  ECF No. 11-1 at 345.  Fr. X-rays of Hardwick's lumbar spine, Dr. Charles D. Clauss, D.C., diagnosed moderate degenerative joint changes throughout the lumbar spine and sacroiliac joints, with a mildly hyperlordotic lumbar spine.  ECF No. 11-1 at

344.  Hardwick's pain was constant, sharp, and burning, and was aggravated by sitting.  ECF No. 11-1 at 347.  Hardwick also reported left leg numbness sometimes.  ECF No. 11-1 at 347.  She had been prescribed anti-inflammatory medications.  ECF No. 11-1 at 347.  Hardwick had a normal gait, a normal lordosis with no spine tilt, normal toe and heel walks, a negative right straight leg raise, but a positive left straight leg raise, and pain on palpation at L5 and S1 bilaterally.  ECF No. 11-1 ay 348.  Dr. Clauss treated Hardwick in February 2016.  ECF No. 11-1 at 518.

In  June  2016,  Hardwick  was  examined  by  Dr.  Shbeeb  for  her fibromyalgia/chronic pain syndrome, for which she was taking Cymbalta.  ECF No. 11-1 at 402, 427.  Dr. Shbeeb had previously seen Hardwick in February 2012 and March 2013, after which she was followed by her primary care provider.  ECF No. 11-1 at 402, 427.  Hardwick reported progressive increased muscle pain and joint pain, progressive declined functional status, weight gain (of more than 40 pounds), and  memory  changes  and  headaches,  fatigue,  weakness,  exertional  dyspnea, anxiety depression, agitation, and insomnia, which her current treatment was not adequately controlling.  ECF No. 11-1 at 402, 427.  Dr. Shbeeb found widespread muscle attachment tender points in her upper and lower torso.  ECF No. 11-1 at 402, 427.  Dr. Shbeeb referred Hardwick for a chronic pain management evaluation.  ECF No. 11-1 at 402, 427.

In July 2016, Hardwick's cholesterol and LDL were high.  ECF No. 11-1 at 358.  An MRI of Hardwick's cervical spine showed degenerative disc disease and

spondylosis, a congenitally small cervical canal, minimal central canal narrowing, and left-sided foraminal narrowing at C5-6.  ECF No. 11-1 at 451.  Hardwick's blood pressure was 144/88 and she weighed 256 pounds.  ECF No. 11-1 at 440.  She complained of muscle pain and left arm and left grip weakness.  ECF No. 11-1 at 440.  Clonazepam and regular exercise were prescribed.  ECF No. 11-1 at 440.

In August 2016, Hardwick complained of worsened shoulder pain and continued memory impairment.  ECF No. 11-1 at 489.  Hardwick stated she sometimes could not remember how to do routine things.  ECF No. 11-1 at 489.  She was examined by Dr. Gregory Dowd, a neurologist.  ECF No. 11-1 at 453.  Dr. Dowd noted Hardwick's history of shoulder surgery four years before.  ECF No. 11-1 at 453.  Hardwick complained of left arm pain down the forearm and tingling on the middle digits of her left hand, which are aggravated by lifting objects.  ECF No. 11-1 at 453.  Hardwick weighed 236 pounds, was 5' 5 ½" tall, and her blood pressure was 135/77.  ECF No. 11-1 at 409.  Her neurological and lumbar examinations were normal.  ECF No. 11-1 at 409.  Dr. Dowd diagnosed cervical radiculopathy and prescribed a trial Medrol dose pack and Meloxicam (an anti-inflammatory).  ECF No. 11-1 at 453.

In September 2016, Hardwick underwent an EEG with Dr. Mohammed Zeibo.  ECF No. 11-1 at 457.  Hardwick's awake and asleep routine EEG were normal.  ECF No. 11-1 at 457.

Also in September 2016, Hardwick reported that she wanted a CT scan because she was still having memory problems.  ECF No. 11-1 at 484.  Hardwick also complained that the steroids prescribed by Dr. Down stopped helping when she stopped taking them, and that the Tramadol did not help the Mobic.  ECF No. 11-1 at 484.  Hardwick was prescribed Gabapentin for her fibromyalgia, Trazodone for sleep, Tylenol for arthritis pain, and was referred for a left knee x-ray.  ECF No. 11-1 at 485.  The x-rays of her left knee showed mild medial joint space loss without evidence for an acute osseous abnormality.  ECF No. 11-1 at 556.

In October 2016, Hardwick complained of left leg numbness and tingling, without weakness or inflammation.  ECF No. 11-1 at 496.  She was diagnosed with lumbar radiculopathy and prescribed Celestone and a Medrol dose pack.  ECF No. 11-1 at 497.

In December 2016, x-rays of Hardwick's lumbar spine showed moderate degenerative joint changes throughout the lumbar spine and sacroiliac joints, with a mildly hyperlordotic lumbar spine.  ECF No. 11-1 at 344.  Hardwick complained about memory issues, but her testing with Dr. Zeibo had been normal and she had not started any medications.  ECF No. 11-1 at 479.  Hardwick stated that she had pain in her low back pain radiating to her left hip that Gabapentin was not relieving.  ECF No. 11-1 at 479.  She was also not sleeping well, and said the Trazadone was not working.  ECF No. 11-1 at 479.  Her anxiety had increased, she was irritable, and she lacked energy.  ECF No. 11-1 at 479.  Hardwick was

8

diagnosed with hypothyroidism, fibromyalgia, trochanteric bursitis, anxiety, and depressions. ECF No. 11-1 at 480. She was prescribed Abilify, her Gabapentin was increased, and her Trazadone was continued. ECF No. 11-1 at 480.

In February 2017, Hardwick was evaluated for weight loss management. ECF No. 11-1 at 474. Hardwick was 53 years old, weighed 265 pounds, was 65 inches tall, and her blood pressure was 154/52. ECF No. 11-1 at 474. Hardwick was prescribed Tenuate (an appetite suppressant) for her obesity, and instructed to follow a restricted calorie diet and to exercise daily. ECF No. 11-1 at 476.

In March 2017, Hardwick was evaluated for obesity and weight loss management. ECF No. 11-1 at 468. Hardwick was 53 years old, weighed 251 pounds, and her blood pressure was 168/88. ECF No. 11-1 at 468. Since her last visit, Hardwick had lost 14.4 pounds. ECF No. 11-1 at 468. Although Hardwick was not dieting or exercising, she was taking Tenuate. ECF No. 11-1 at 468, 470, 474. Hardwick was advised to restrict her calories and exercise daily. ECF No. 11-1 at 470.

In June 2017, Hardwick was evaluated for anxiety. ECF No. 11-1 at 462. Although her anxiety and depression were stable, a new family problem was causing her anxiety, with nausea, abdominal pain, and difficulty sleeping. ECF No. 11-1 at 462, 465. Hardwick was prescribed Prilosec, Trazodone, and Xanax. ECF No. 11-1 at 465.

In December 2017, Dr. William Crenshaw, an orthopedist, evaluated Hardwick for complaints of pain and weakness in her left shoulder, aggravated by daily activities, lifting overhead, and motion. ECF No. 11-1 at 507. Hardwick stated that nothing relieved her symptoms, which were worse at night. ECF No. 11-1 at 507. X-rays of her left shoulder were unremarkable. ECF No. 11-1 at 555, 593, 683. Dr. Crenshaw diagnosed pain in her left elbow due to lateral epicondylitis and left shoulder pain due to muscle/tendon strain of the left shoulder rotator cuff. ECF No. 11-1 at 510. Dr. Crenshaw prescribed Mobic and ordered an MRI of the left shoulder. ECF No. 11-1 at 510.

In January 2018, Dr. Crenshaw noted that Hardwick was 5'5" tall and weighed 287 pounds. ECF No. 11-1 at 513. Hardwick's left shoulder range was still painful. ECF No. 11-1 at 514. Dr. Crenshaw diagnosed right shoulder pain with partial-thickness rotator cuff tear and acromioclavicular joint arthritis. ECF No. 11-1 at 515. Although Hardwick still had some discomfort with activity as well as joint pain, she was continued on Mobic. ECF No. 11-1 at 515.

In July 2018, Hardwick underwent six weeks of physical therapy, resulting in a somewhat improved ease of function. ECF No. 11-1 at 521-28.

In September 2018, Hardwick reported to an emergency room for dizziness, lightheadedness, and blood pressure problems. ECF No. 11-1 at 531, 573. Hardwick's blood pressure was 151/92. ECF No. 11-1 at 533, 573. She complained to the doctor of headache and dizziness. ECF No. 11-1 at 548. A CT scan of her

head showed no acute intracranial process. ECF No. 11-1 at 542, 584-85, 591-92. Hardwick was diagnosed with vertigo and asymptomatic bateriuria. ECF No. 11-1 at 545, 576. She was prescribed Losartan and told to avoid salt and lose weight. ECF Nos. 1101 at 548, 590.

In October 2018, Hardwick's fibromyalgia and depression were stable, she was not exercising, she was sleeping well, and her GERD was resolved. ECF No. 11-1 at 639, 677. Later in October 2019, Hardwick was 55 years old, weighed 254 pounds and her blood pressure was 146/72. ECF No. 11-1 at 627, 675. Hardwick's pain and discomfort were controlled, so her medications were continued. ECF No. 11-1 at 632, 676.

In November 2019, Hardwick weighed 271 pounds and her blood pressure was 137/83. ECF No. 11-1 at 616, 670. Hardwick's medications were continued, and she was counseled as to weight loss, diet, and exercise. ECF No. 11-1 at 621, 671.

In January 2020, Hardwick was seen for elevated blood pressure and her Losartan was increased. ECF No. 11-1 at 605, 609, 665.

In February 2020, Hardwick was 56 years old and complained of intermittent dizziness and shortness of breath on exertion. ECF No. 11-1 at 594. Her blood pressure was 144/86. ECF No. 11-1 at 598, 660. Hardwick was diagnosed with intermittent dizziness, shortness of breath on exertion, and hypertension. ECF No. 11-1 at 598, 661. Her Losartan prescription was continued, she was advised to

11

increase her fluid intake and continue her blood pressure log, and she was referred to cardiology.  ECF No. 11-1 at 599, 661.

### C.    2020 Administrative Hearing

In May 2020, Hardwick testified at her administrative hearing.  ECF No. 11-1 at 48.  She had worked for 18 years as a customer service rep for a financial institution–a loan company.  ECF No. 11-1 at 51.  She worked with customers, explained the loans to them, and used a computer.  ECF No. 11-1 at 51.

Hardwick testified that she answered the phone and, if the call was for her boss, she had to go to his office and hand him the phone.  ECF No. 11-1 at 51-52. Every time Hardwick printed a credit report, she had to get it from the printer in another office.  ECF No. 11-1 at 52.  She also had to take the loan papers to her boss when they were ready.  ECF No. 11-1 at 58.  The physical activity became too much for Hardwick due to her fibromyalgia, which was diagnosed in 2012.  ECF No. 11-1 at 52, 58.  Moreover, Hardwick's employer's dependence on her to do everything in the office except make the loan decisions became a mental strain.  ECF No. 11-1 at 52.

Hardwick testified that she cannot sit more than 30 minutes, cannot stand more than 15 minutes, cannot walk more than about 50 yards, and has difficulty gripping to pick things up.  ECF No. 11-1 at 52-53.  She cannot tie shoelaces and cannot bend over.  ECF No. 11-1 at 53.  Hardwick testified that she has gained 80

pounds since she stopped working, so she is 5'5" tall and weighs 286 pounds.  ECF No. 11-1 at 53.

Hardwick testified that she did physical therapy and needling (acupuncture) for her fibromyalgia but that it did not help.  ECF No. 11-1 at 53-54.

Hardwick's fibromyalgia prevents her from sitting in an office chair more than 20 minutes.  ECF No. 11-1 at 58-59.  She is also unable to get up and down from a chair continuously.  ECF No. 11-1 at 58.  She can sit comfortably for about 30 minutes before she needs to stand up.  ECF No. 11-1 at 59.

Hardwick testified that both of her rotator cuffs are torn, so she cannot reach overhead.  ECF No. 11-1 at 57.  Hardwick can reach in front of her and to the sides, but cannot hold her arms out very long.  ECF No. 11-1 at 57-58.

Hardwick testified that she is not comfortable with driving, but that her husband gets anything she needs, so she very rarely drives.  ECF No. 11-1 at 54. Hardwick is not able to cook or clean.  ECF No. 11-1 at 54.  She cannot hold a towel up long enough to fold it.  ECF No. 11-1 at 54.  Her husband cooks and her daughter does the housework.  ECF No. 11-1 at 54.  Hardwick is also not able to grocery shop. ECF No. 11-1 at 54.  Hardwick does not have any hobbies.  ECF No. 11-1 at 54-55.

Hardwick testified that, during the day, she reads a lot, eats the lunch her husband fixes, then naps for a couple of hours.  ECF No. 11-1 at 55.  When she gets up, Hardwick talks with her husband for a while, then walks around the house while he tends his garden.  ECF No. 11-1 at 55.

13

Hardwick gets short of breath walking across her house or doing almost any other physical activity.  ECF No. 11-1 at 55-56.  Hardwick admitted her doctor has suggested diets for her.  ECF No. 11-1 at 56.  Hardwick also has high blood pressure, that she measures and logs daily, and hypothyroidism.  ECF No. 11-1 at 57.

Hardwick testified that she would like to be able to travel and see her family. ECF No. 11-1 at 56.  Her doctors told they have done all they can for her, so she prays for a miracle.  ECF No. 11-1 at 56.

Hardwick has four bad days out of five due to "extreme pain" in her shoulders and her entire upper body.  ECF No. 11-1 at 59.  The pain makes her stay in bed, take more medicine, and hope it goes away.  ECF No. 11-1 at 59.  Although the pain gets better, it never goes completely away.  ECF No. 11-1 at 60.

The VE testified that Hardwick's work as a loan clerk (DOT 205.367-022) was sedentary, semi-skilled, SVP 4.  ECF No. 11-1 at 60.  The VE noted that Hardwick had testified to doing a lot of walking, but the VE was not sure whether she walked more than two hours per day.   ECF No. 11-1 at 60.

The VE testified that, if the claimant could: lift and carry ten pounds occasionally and five pounds frequently; stand and walk for up to two hours per day; sit for up to six hours per day; and could not do any overhead work, she could do her past work as a loan clerk.  ECF No. 11-1 at 61.  The VE further testified that, if the

claimant had four bad days a month and could not work, she would not be able to do her past work or any other work on a sustained basis. ECF No. 11-1 at 61.

The VE testified that, if the claimant had symptom exacerbation and high levels of pain, and was off-task at least 20 percent of the workday, she would not be able to maintain any competitive employment. ECF No. 11-1 at 61. Also, if the claimant needed two extra 15-minute breaks outside of the normal schedule break, she would not be able to maintain any employment. ECF No. 11-1 at 61-62.

### D.    ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Hardwick: (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 514 U.S. 1120 (1995) (citing *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled. Under the regulations, this means that the claimant bears the

15

burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. *See Greenspan*, 38 F.3d at 237.

In this case, the ALJ found that Hardwick has not engaged in substantial gainful activity since June 11, 2016 (the alleged onset date), and that her disability insured status expired on December 31, 2021. ECF No. 11-1 at 16. The ALJ further found that Hardwick has severe impairments of fibromyalgia, shoulder impairment, degenerative disc disease, and obesity, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1. ECF No. 11-1 at 17-18. The ALJ then found that Hardwick has the residual functional capacity to perform sedentary work except no overhead lifting. ECF No. 11-1 at 18. The ALJ concluded that Hardwick was able to perform her past relevant work as a loan clerk through the date of his decision on May 28, 2020. ECF No. 11-1 at 18, 22. The sequential analysis thus ended at Step 4, with a finding that Hardwick was not disabled. ECF No. 11-1 at 22.

## II.    Law and Analysis

### A.    Scope of Review

In considering Social Security appeals, a court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors.

*See McQueen v. Apfel*, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. *See Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision, but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. *See Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. *See Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987); *Dellolio v. Heckler,* 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than a court. *See Allen v. Schweiker,* 642 F.2d 799, 801 (5th Cir. 1981); *see also Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). A court does have authority, however, to set aside factual findings that are not supported by substantial evidence and to correct errors of law. *See Dellolio*, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *See Johnson v. Bowen*, 864 F.2d 340 (5th Cir. 1988); *Dellolio*, 705 F.2d at 125.

17

**B.**    <u>Hardwick did not carry her burden of proving she is disabled by pain.</u>

Hardwick contends the ALJ's physical residual functional capacity determination ("RFC") is not supported by substantial evidence because the ALJ calculated Hardwick's RFC based on his own lay interpretation of the medical evidence.

1.    <u>The ALJ's findings as to RFC supported by substantial evidence.</u>

Hardwick contends the ALJ failed to rely on any medical evidence to show that Hardwick can return to work on a "regular and continuing basis" because there are no medical opinions in the record as to Hardwick's physical limitations. Hardwick argues that, because there is no medical evidence as to Hardwick's physical residual functional capacity, the ALJ's assessment of Hardwick's physical residual functional capacity is improperly based on his lay opinion.

A claimant's impairments may cause physical or mental limitations that affect what he can do in a work setting.  Residual functional capacity is a medical assessment, based on all of the relevant evidence, of the work a claimant can perform despite his or her limitations.  *See* 20 C.F.R. " 404.1545, 416.945.  Although the burden of proof in a disability case is on the claimant to show inability to perform her usual line of work, once that fact is established, the burden shifts to the Commissioner to show that the claimant is able to perform some other kind of substantial work available in the national economy.  *See Herron v. Bowen*, 788 F. 2d 1127, 1131 (5th Cir. 1986); *see also Babineaux v. Heckler*, 743 F.2d 1065, 1067

(5th Cir. 1984).   The Commissioner has the burden to establish a claimant's residual functional capacity.  *See Leggett v. Chater*, 67 F.3d 558, 565 (5ᵗʰ Cir. 1995).

Hardwick's burden was to prove that she was disabled within the meaning of the Social Security Act.  That requirement means that she must show a "medically determinable" impairment and that she is unable "to engage in substantial gainful activity."  *See Greenspan v. Shalala*, 38 F.3d 232 (5th Cir. 1994), *cert. den.*, 514 U.S. 1120 (1995); *see also* 20 C.F.R. '423(d)(1)(A) and (d)(3); 20 C.F.R. '404.1508; 42 U.S.C. '423(d)(1)(A).

Hardwick argues the ALJ erred in relying on his own assessment of the medical evidence to determine Hardwick's RFC.  Hardwick contends that, because the ALJ believed Hardwick was limited to sedentary work, he should have sought medical guidance because that was a "strong indication" that she was "close to disabled."

The Fifth Circuit also imposes a duty on an ALJ "to develop the facts fully and fairly relating to an applicant's claim for disability benefits."  *See Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (*citing Ripley*, 67 F.3d at 557)).  "If the ALJ does not satisfy his duty, his decision is not substantially justified."  *See id.* However, reversal is appropriate only if the applicant shows prejudice from the ALJ's failure to request additional information.  *See Newton*, 209 F.3d at 458 (*citing Ripley*, 67 F.3d at 557).  Prejudice can be established by showing that additional

evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision. *See id.*

A medical advisor is a neutral advisor who renders expert opinion based solely on medical records and evidence. *See Puckett v. Barnhart*, 2003 WL 1831066, at *10 (E.D. Tex. 2003) (citing *Richardson v. Perales,* 402 U.S. at 408 (1971); 20 C.F.R. §§ 404.1512(b)(6), 404.1527(f)). A medical advisor generally is a board-certified specialist that explains or clarifies information for an ALJ. *See Puckett*, 2003 WL 1831066, at *10 (*citing Richardson,* 402 U.S. at 408).

Under applicable regulations, an ALJ is required to utilize a medical advisor only in certain instances when it is unclear as to whether a claimant's impairments are equivalent in severity to impairments in the Listings, and when establishing the onset date of disability for slowly progressive impairments. *See Puckett*, 2003 WL 1831066, at *10. Otherwise, the ALJ does not have a duty to seek the opinion of a medical advisor at any time during the five-step sequential analysis. *See Puckett*, 2003 WL 1831066, at *10 (*citing Richardson,* 402 U.S. at 408 (recognizing that medical advisors *could, but were not required* to be used in explaining complex medical problems to the examiner), and *Haywood v. Sullivan,* 888 F.2d at 1467 ("An ALJ requests a MA [medical advisor] to testify when she or he feels it necessary.")).

Moreover, the Commissioner is required to recontact a medical source "[w]hen the evidence ... from [the] treating physician or psychologist or other medical source is inadequate for [the Commissioner] to determine whether [the

claimant is] disabled." *See Cornett v. Astrue*, 261 Fed. Appx. 644, 648–49 (5th Cir. 2008) (citing 20 C.F.R. § 416.912(e)). The ALJ's need to contact a medical source arises only when the available evidence is inadequate to determine if there is a disability. *See Cornett*, 261 Fed. Appx. at 648–49 (*citing* 20 C.F.R. § 416.912(e)).

Hardwick only argues generally that the ALJ should have relied on a medical advisor in making his residual functional capacity assessment. *See Puckett*, 2003 WL 1831066, at *10. The Fifth Circuit has held that the absence of a medical source statement about a plaintiff's ability to work does not, by itself, make the record incomplete. *See Gutierrez v. Barnhart*, 04-11025, 2005 WL 1994289, at *7 (5th Cir. 2005) (*citing Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir.1995) ("In a situation such as the present one where no medical statement has been provided, our inquiry focuses on whether the decision of the ALJ is supported by substantial evidence in the existing record.")). "Whatever might be argued about the advisability of getting such assistance, one cannot successfully argue that failure to obtain medical advisor testimony constitutes error." *See Puckett*, 2003 WL 1831066, at *10.

Nothing in the record suggests that the ALJ needed additional medical information to reach an informed decision about whether Hardwick was disabled. *Compare Webster v. Kijakazi*, 19 F.4th 715, 720 (5th Cir. 2021) (where the record was replete with medical documents on which the ALJ based his opinion, the ALJ did not err in not ordering a consultative exam). The ALJ fulfilled her duty to

develop the record fully before ruling on Hardwick's claim for DIB benefits. *Compare Cornett*, 261 Fed. Appx. at 648–49 ("[T]he ALJ's need to contact a medical source arises only when the available evidence is inadequate to determine if there is a disability. . . .[T]here is no basis for us to conclude that recontacting Dr. Walkes would have overcome the substantial medical evidence in the record and altered the ALJ's decision."). The ALJ made her residual functional capacity determination from Hardwick's medical records, which spanned nine years, noting the results of her innumerable tests and the statements of her treating health care providers. The ALJ's finding that Hardwick can perform sedentary work is based on substantial evidence found in a sufficiently developed record. *Compare Michaud v. U.S. Commissioner,* 2021 WL 790190, at *3-*4 (W.D. La. 2021) (claimant with fibromyalgia and obesity could perform sedentary work), report and recommendation adopted, 2021 WL 786730 (W.D. La. 2021); *Bingham v. Astrue*, 2009 WL 1883349, at *9-*10 (N.D. Tex. 2009) (claimant with fibromyalgia and obesity was able to perform a modified range of sedentary work); *Nelson v. Colvin,* 2013 WL 4875068, at *16-*18 (S.D. Tex. 2013) (claimant with obesity and fibromyalgia could perform a reduced range of sedentary work).

### 2.   Hardwick did not show that she is disabled by pain.

The ALJ's finding that Hardwick could perform her past relevant work indicates the ALJ's conclusion that Hardwick did not meet her burden of proving that she could not return to such work. Hardwick argues that she cannot return to

her work due to chronic pain. However, Hardwick has not shown that she suffers from disabling pain.

While pain can be severe enough to create a disabling condition, the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled. *See Elzy v. Railroad Retirement Bd.*, 782 F.2d 1223, 1225 (5th Cir. 1986); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain will not take precedence over conflicting medical evidence. *See Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989) (citing *Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir. 1985)). Therefore, such a credibility determination is within the province of the ALJ, and is entitled to considerable judicial deference. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991); *Wren v. Sullivan*, 925 F.2d 123, 128-29 (5th Cir. 1991); *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987). The law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints and articulate her reasons for rejecting any subjective complaints. *See Falco v. Shalala*, 27 F.3d 162, 163-64 (5th Cir. 1994).

The ALJ made the following findings as to Hardwick's pain and credibility (ECF No. 11-1 at 21-22):

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. . . .

Chronic pain management was recommended but claimant was not interested in taking pain pills prescribed by pain management. The claimant has not taken any narcotic based pain relieving medications in spite of the allegations of quite limiting pain.

. . . While it is reasonable to expect the claimant would have some limitation in daily activities because of her impairments and resultant pain, no doctor has advised the claimant not to work or placed restriction on her activities.
After review of the entire record, the undersigned is not persuaded by the claimant's allegation that the severity of functional limitation imposed by her impairments precludes the performance of all work. While it is reasonable to expect the claimant would have some limitation in daily activities because of her impairments and resultant pain, no doctor has ever advised the claimant not to work or placed restriction on her activities.

Despite impairments, the record shows the claimant is able to drive if necessary, ride in a car, launder and wash dishes. . . . These activities are inconsistent with her allegations of incapacitating pain and limitation. Rather, they suggest the claimant can perform a modified range of "sedentary" work activities. This is not to minimize the medical records demonstrated in the record. The claimant certainly does have impairments that limit activities, however, the clinical findings demonstrating these impairments fail to disclose any organic abnormality capable of producing the pain and limitation of incapacitating proportions alleged. While the record shows treatment for fibromyalgia chronic pain syndrome, she is treated with oral medications alone. It was recommended she seek treatment by pain management, which claimant refused.

24

. . . At the present, her symptoms are managed with oral medications on an outpatient basis alone with no limitations noted despite her allegations of such.

. . . Moreover, the record fails to show ongoing specialty treatment or need for ongoing prescription pain medication (Ex. 5F and 6F). The medical record shows no ongoing specialty care for her degenerative disc disease.

The ALJ in this case has made the mandatory indication of the basis for her credibility choices concerning claimant's complaints. And since her choices are not unreasonable, the ALJ's finding that Hardwick's pain would not prevent her from performing sedentary work is proper. *See Carry v. Heckler*, 750 F.2d 479, 485-86 (5th Cir. 1985). Substantial evidence supports the Commissioner's conclusion that Hardwick is not disabled by pain.

III. <u>**Conclusion**</u>

Based on the foregoing, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED, and that Hardwick's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.

Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this _____21st_____ day of December 2022.

Joseph H.L. Perez-Montes
United States Magistrate Judge